UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
CLERK'S OFFICE

⟶ 2004 10 P 4: 19

U.S. DISTRICT COURT
DISTRICT OF MASS

)
In re: PETITION OF THE   )
HARTFORD CASUALTY   )    Civil Action No:
INSURANCE COMPANY   )
)    **04 - 3005 1 - MAP**

## PETITION OF HARTFORD CASUALTY INSURANCE COMPANY
## TO MODIFY PROTECTIVE ORDER

Pursuant to Fed.R.Civ.P. 26(c) and 28 U.S.C. §1361, petitioner Hartford Casualty Insurance Company ("Hartford") moves that the Court modify, in part, the "Protective Order Concerning Confidentiality of Certain Case Materials" (the "Protective Order") entered on February 16, 1999 [Dkt No. 35; Ex. A hereto] in the case entitled *The Yankee Candle Company, Inc. v. The Bridgewater Candle Company, LLC,* Civil Action No. 98-30226-MAP (the *"Yankee Candle"* Action). Hartford brings this Petition *solely* for the limited purpose of obtaining certain information presently filed under seal for use in a related action entitled *The Bridgewater Candle Company, LLC v. Hartford Casualty Insurance Company,* Civil Action No. 6-01-4719-26 (D. S.C.)(the "South Carolina Action") that is *currently being tried* before the Hon. Henry Floyd in Greenville, South Carolina.

The specific relief sought by Hartford in this Petition is as follows:



1.    Modify the Protective Order to permit Hartford to obtain from this Court copies of all affidavits and exhibits filed in connection with the attorneys' fees proceedings that were held in the *Yankee Candle* Action [Dkt. Nos. 199, 200, 203, 204, 205, 206, 209, 210] to the extent that they are presently under seal so that they may be used in the trial of the South Carolina Action; and

2.      Confirm that the Settlement Agreement entered into by Bridgewater Candle and Yankee Candle in November 2001 *is not* subject to the Protective Order entered in the *Yankee Candle* Action and, accordingly, *this Court* has no objection to the Settlement Agreement being referred to or admitted into evidence in the South Carolina Action.

As grounds for this Petition, Hartford states:

1.      The relief sought is critical to the defense of the claims asserted against Hartford by Bridgewater in the South Carolina Action and the claims for breach of contract and other causes of action that Hartford has asserted against Bridgewater in that case.

2.      There is no other source available to Hartford to obtain the requested materials as Bridgewater has refused to provide them to Hartford in the South Carolina Action and/or objected to their admission into evidence based upon the Court's Protective Order in the *Yankee Candle* Action.

3.      There is no reason for the requested materials to continue to be maintained under seal, including because there is a presumptive right of access to judicial documents; the *Yankee Candle* Action has been completely resolved by settlement; an appropriate form of Confidentiality Order has been entered in the South Carolina Action [Ex. B. hereto]; and Yankee Candle has indicated that it has no objection to Hartford's use of the Settlement Agreement in the South Carolina Action. [Ex. C hereto].

4.      The District Court Judge in the South Carolina Action has stated that, in deference to the Protective Order entered in this Court, he is not inclined to permit Hartford to refer to or introduce the Settlement Agreement with respect to the *Yankee Candle* Action unless this Court

affirms that the Settlement Agreement is *not* subject to the Protective Order and that this Court has no objection to its use in the South Carolina Action.

In these circumstances, "good cause" exists to modify the terms of the Protective Order and to grant Hartford the relief requested.

## BACKGROUND FACTS

A.    **The Yankee Candle Action**

The Court is, of course, familiar with the *Yankee Candle* Action.  However, insofar as relevant to Hartford's Petition, the following facts are set forth. On November 30, 1998, Yankee Candle Company, Inc. ("Yankee") brought the *Yankee Candle* Action in this Court.  The substance of the allegations against Bridgewater Candle, LLC ("Bridgewater") in the *Yankee Candle* Action related to claimed violations of certain intellectual property rights of Yankee, including trademark infringement.

Bridgewater was granted summary judgment in the *Yankee Candle* Action. [Dkt. Nos. 168, 169, 185, 185, 187].  Yankee appealed the summary judgment order, which was upheld on appeal. *The Yankee Candle Company, Inc. v. The Bridgewater Candle Company, LLC*, 259 F. 3d 25 (1st Cir. 2001).   Subsequent to Bridgewater's successful defense of the *Yankee Candle* Action, Bridgewater sought and received an award of its reasonable attorneys' fees and costs. [Dkt. Nos. 212, 213].  Yankee appealed the attorneys' fees award, which Bridgewater and Yankee settled while the appeal was pending.  Under the terms of the settlement, Yankee agreed to pay Bridgewater a certain amount in exchange for a mutual release of all claims by both parties.

In February 1999, the Court granted the joint motion made by Yankee and Bridgewater for the entry of the Protective Order. [Dkt. No. 35].  A true copy of the Protective Order is attached as Exhibit A hereto.   The Protective Order contains fairly standard provisions governing the

designation of materials produced during discovery that a party seeks to protect from disclosure outside the litigation. [Ex. A., ¶¶ 1-6]. The Protective Order also contains provisions authorizing materials filed with the Court to be placed under seal. [Ex. A, ¶ 9]. The Protective Order further states that the Court is to retain jurisdiction over the disclosure or use of such materials following termination of the action. [Ex. A, ¶ 14].

As discussed below, central to the South Carolina Action are the proceedings relating to the Court's award of attorney's fees to Bridgewater. In September 2000, Bridgewater petitioned the Court for an award of its attorneys' fees and costs. [Dkt. Nos. 189-191]. In the petition, Bridgewater sought $1,264,021.00, which comprised a portion of the fees ($1,131,369.00) and expenses ($132,652.00) incurred by Bridgewater through the end of November 2000. *Affidavit of Ilan D. Barzilay In Support of Bridgewater's Motion to Recover Fees* dated January 11, 2001, ¶ 8 [Dkt. No. 206]; *Affidavit of Michael A. Albert*, dated January 10, 2001, ¶ 18 [Dkt. No. 203]. The amount sought by Bridgewater in its fee petition ($1,264,021.00) was ***less than*** the amount it had sought to be reimbursed from Hartford as of the time it filed its fee petition. According to Mr. Albert:

> 15. The expenses included in this fee request and in the attached Exhibits reflect only expenses billed to Bridgewater directly by its own attorneys. Many other expenses have been incurred by Bridgewater in defending itself in this matter, but Bridgewater has not requested recovery of these other expenses which include expert witness fees, reimbursement of third-party attorneys, reimbursement for time spent by company officers, or reimbursement for-litigation-related expenses (e.g. travel & lodging) incurred directly by Bridgewater in connection with this case and not billed to it by a law firm.

> 16. In addition to excluding the above expenses, Bridgewater's counsel have exercised billing judgment in submitting Exhibits A-D. In particular, numerous entries from these bills have been redacted, and accordingly excluded from the total sum sought herein, for several reasons ***including the avoidance of any possible risk that such time charges may have resulted from inefficiencies, unnecessary duplication of effort, or the involvement of personnel insufficiently familiar with the case or insufficiently specialized in the relevant field***. The blanks

4

where these items were located are marked "Redacted." The charges incurred by Bridgewater in connection with these redacted items have been excluded from the total amount of attorneys' free sought by Bridgewater.

*Affidavit of Michael A. Albert*, dated January 10, 2001, ¶¶ 15-16. [Dkt. No. 203].

By Order dated May 14, 2001, the Court awarded Bridgewater "$890,282.40 in attorneys' fees and $117,398.07 in costs" for a total of $1,007,680.40. [Dkt. No. 212]. This award was $256,340.60 less than was sought by Bridgewater. In reducing Bridgewater's attorneys' fee request, the Court focused on three areas. *Memorandum Regarding Defendant's Motion to Recover Attorneys' Fees and Costs* dated May 14, 2001 at 27-32 [Dkt. No. 213]. *First*, while recognizing the necessity of travel, the Court reduced the award by $33,908.00 on the basis that the "First Circuit has declined to award fees at a professional rate for time in transit." [*Id.* at at 29]. *Second*, the Court reduced the requested fee amount by ten percent ($103,589.30) "because of the continued validity of Yankee's tortious interference claim." [*Id.* at 30]. *Finally*, it reduced the requested fee amount by an additional ten percent ($103,589.30) *"for excessive hours, duplication of services and fruitless pursuits."* [*Id.* at 30 (emphasis added)].

### B.    The South Carolina Action

Bridgewater is a South Carolina company. Hartford issued a commercial general liability insurance policy for the period from April 18, 1998 through April 18, 1999, to Greenleaf, Inc., a corporation under common ownership with Bridgewater. The Hartford policy named Bridgewater an additional insured.

Upon being served in the *Yankee Candle* Action, Bridgewater retained the services of Dority & Manning, an intellectual property law firm located in Greenville, South Carolina, with which it had a pre-existing relationship. Bridgewater – in consultation with and upon the advice

of Dority & Manning – retained the services of Michael Albert, Esq., an intellectual property attorney who was then with the firm of Foley, Hoag & Eliot, LLP, in Boston. Though Mr. Albert was initially hired to act as local counsel, his role quickly expanded to that of co-lead counsel. Both law firms were retained prior to the time the defense was tendered to Hartford.

Hartford made the decision to accept the defense of the *Yankee Candle* Action a few weeks after receiving notice of the suit. While there is some dispute as to exactly when the acceptance of its defense was communicated to Bridgewater, it was clear that Bridgewater was aware of this decision not later than May 1999. Though the policy gives Hartford the right to control the defense – which included the right to retain counsel of its own choosing to defend Bridgewater – Hartford made the decision to allow Dority & Manning and Foley, Hoag & Eliot, LLP, to remain as Bridgewater's counsel in this case.

Throughout the course of the underlying litigation, Bridgewater continued to be represented by Dority & Manning and Mr. Albert, and Bridgewater directed its own defense. In fact, Bridgewater was in complete control of its defense in the underlying litigation. Because Dority & Manning and Mr. Albert were initially retained by Bridgewater before the defense was tendered to Hartford, they billed Bridgewater directly and Bridgewater paid them directly. Bridgewater then sought reimbursement from Hartford on an infrequent basis.

A dispute between Hartford and Bridgewater regarding the amount of the bills arose immediately upon submission of the first invoices. The dispute centered on: (1) whether the amounts being charged for each task were reasonable; (2) whether all of the tasks being billed were related to the defense of Bridgewater in the *Yankee Candle* Action; and (3) whether the bills were formatted in a manner that would permit Hartford to ascertain whether the charges were reasonable and related to the defense. This dispute continued throughout the course of the

6

*Yankee Candle* Action and is central to the dispute in the South Carolina Action. Nevertheless, as of the time the suit was filed in South Carolina, ***Hartford had paid $1,519,391.84 for attorneys' fees and costs*** in connection with the *Yankee Candle* Action. Most of this amount had been paid directly to Bridgewater in the form of reimbursements, and the balance was paid directly to Bridgewater's attorneys.

Nevertheless, Bridgewater took the position after the Court's May 14, 2001 Order that Bridgewater "does not anticipate any of the attorney fees . . . being reimbursed to The Hartford as it is clear from the Court's order that they are punitive in nature." [*Deposition of Gary Brochu*, dated November 14, 2003]. Thereafter, a mediation was held in an effort to settle the claims between Yankee Candle and Bridgewater. However, Bridgewater excluded Hartford from all ensuing settlement discussions. Hartford attempted to intervene in the *Yankee Candle* Action in order to assert a claim to the attorneys' fee award [Dkt. Nos. 221-223]. Hartford's motion was denied on December 14, 2001.

In the meantime, Bridgewater settled with Yankee Candle on November 30, 2001. The Settlement Agreement between Yankee Candle and Bridgewater was never filed with the Court, nor was the Court asked to approve any of its terms. In fact, the Court ***denied*** a motion that was made to impound the Settlement Agreement on December 14, 2001. Counsel for Yankee Candle has provided Hartford with a letter indicating that Yankee Candle has ***no objection*** to Hartford using the Settlement Agreement in the South Carolina Action. [Ex. C hereto].

Bridgewater and Hartford have each alleged a number of claims and counterclaims against the other party arising out of the *Yankee Candle* Action, including causes of action for breach of contract, insurance "bad faith," breach of fiduciary duty, unfair trade practices, declaratory judgment, "reverse bad faith," failure to cooperate, breach of Hartford's subrogation

rights, and violation of the South Carolina Unfair Trade Practices Act. In essence, Bridgewater claims that Hartford violated various contractual duties in connection with the defense that it provided to Bridgewater in the *Yankee Candle* Action. For its part, Hartford seeks to recover certain of the defense costs it paid in connection with the *Yankee Candle* Action, including to the extent that it paid an amount that was *far in excess* of the Court's award of attorneys' fees to Bridgewater, which were necessarily incorporated into the terms of its settlement with Yankee Candle.

**ARGUMENT**

**I.    THE COURT SHOULD MODIFY THE PROTECTIVE ORDER**

Based upon the circumstances presented here, the Court should modify the Protective Order *solely* to the extent of allowing Hartford and its counsel to have complete access to the affidavits and related exhibits that were filed in connection with the attorneys' fees proceeding before this Court. There is no reason for these materials to remain eternally under seal. The materials at issue are primarily affidavits of Bridgewater's own attorneys and representatives, including their bills and supporting documents relating to the fees and costs that were sought from the Court. These documents resulted in the May 14, 2001 Order awarding Bridgewater fees and costs of more than $1 million. The *Yankee Candle* Action was resolved long ago by the terms of the Settlement Agreement and is no longer pending. Whatever "good cause" existed to permit these materials to be filed under seal in 2001 no longer obtains. Any issue of confidentiality is moot and the Protective Order should be modified.[1]

---

[1] There is no basis for Bridgewater to claim that any of these documents would reflect or contain "trade secrets" or other proprietary materials as to which ongoing confidentiality is necessary, particularly since the information would be disclosed only to Bridgewater's own insurer, not to any potential competitor. The documents sought by Hartford solely relate to the attorneys' fees claim.

In contrast, Hartford has a pressing need to obtain copies of these materials and to be able to freely use them in the South Carolina Action. By bringing suit against Hartford, Bridgewater has squarely placed "at issue" the facts and circumstances surrounding the fee award. Bridgewater cannot simultaneously maintain such a claim, yet seek to use to Protective Order to prevent relevant and admissible evidence from being used.

Based upon the limited information that Hartford has been able to obtain as set forth above, these affidavits contain admissions against interest that are contrary to the positions being taken by Bridgewater in the South Carolina Action. For example, the statements made by Messrs. Albert and Barzilay quoted above reflect an admission by Bridgewater that it over-billed Hartford for the defense of the *Yankee Candle* action, including time that was duplicative, wasteful or unnecessary. Hartford should be able to freely refer to these statements, and others that may be contained in additional affidavits, to support its position that it did not act in "bad faith" or breach the terms of its policy by paying ***hundreds of thousands of dollars more*** in defense costs than Bridgewater's own attorneys and the Court believed were "reasonable." These documents equally relate to Hartford's claim that it should be entitled to recoup some portion of the attorneys' fees and costs it paid for Bridgewater's defense to the extent that the fees and costs were excessive. Hartford should not have to try the South Carolina Action with its hands tied on these critical points.

Hartford's request should also be considered in light of the general presumption that the public should have access to papers that are filed with the Court in a civil case. *Federal Trade Commission v. Standard Financial Management Corp.*, 830 F.2d 404, 408-409 (1st Cir. 1987)(noting common law presumption that the public ought to have access to judicial records). As the First Circuit noted:

> In *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 55 L.Ed.
> 2d 570, 98 S.Ct. 1306 (1978), the Supreme Court acknowledged
> that 'the courts of this country recognize a general right to inspect
> and copy public records and documents, including judicial records
> and documents.' *Id.* at 597 (footnotes omitted). The privilege
> extends, in the first instance, to 'materials on which a court relies
> in determining the litigants' substantive rights.' *Anderson v.*
> *Cryovac, Inc.,* 805 F.2d 1, 13 (1st Cir. 1986).

830 F.2d at 408. *See In re Providence Journal Co., Inc.,* 293 F.3d 1, 9-10 (1st Cir. 2002)(noting

presumption of common law right of access to judicial documents, particularly to those materials

"which properly come before the court in the course of an adjudicatory proceeding and which are

relevant to its adjudication").

Here, the materials at issue clearly satisfy this test for public access. The affidavits and

accompanying exhibits were submitted to the Court in connection with its adjudication of

Bridgewater's claim to recover its attorneys' fees and costs from Yankee Candle. [Dkt. Nos.

199, 200, 203-206, 209, 210]. After extensive proceedings, the Court issued its Order dated May

14, 2001 based upon those materials and ruled that Bridgewater was entitled to recover more

than $1 million in fees and costs from Yankee Candle. [Dkt No. 212]. The presumption of

public access to these materials required by the cases cited above should trump any claim of

"confidentiality" by Bridgewater, especially since these matters are at issue in the South Carolina

Action. Hartford does not seek these materials simply out of general curiosity, but because they

are directly relevant to a case being tried in another District Court. This Court should

accordingly modify the Protective Order to permit Hartford to have unfettered access to these

materials that have been filed under seal.

## II.    THE COURT SHOULD ENTER AN ORDER PERMITTING
## HARTFORD TO REFER TO THE SETTLEMENT AGREEMENT

As noted above, the Settlement Agreement entered into between Yankee Candle and

Bridgewater is not on file with the Court. The Court was never asked to approve its terms or

take any action with respect to the Settlement Agreement. There is no provision in the Protective Order entered by the Court that can be read to prohibit its use in the South Carolina Action. The Settlement Agreement contains its own terms and conditions relating to confidentiality and the circumstances under which it can be used or referred to by a party. Moreover, Yankee Candle has stated that it does not object to Hartford using or referring to the Settlement Agreement solely in the context of the South Carolina Action. [Ex. C hereto].Nevertheless, the District Court judge in South Carolina has expressed concerns about permitting Hartford to use the Settlement Agreement in that case and requested that Hartford obtain an order or statement from this Court clarifying that the Settlement Agreement *is not* subject to the Protective Order entered by the Court.

Being able to refer to the Settlement Agreement is critical to Hartford's defense of the claims asserted by Bridgewater against it and to pursue Hartford's affirmative claims against its policyholder. In essence, Bridgewater is attempting to reap a windfall as a result of the Court's May 14, 2001 Order. Bridgewater is taking the extraordinary position that it is entitled to the benefit of the more than $1.5 million in attorneys' fees and disbursements that Hartford paid for its defense in the *Yankee Candle* Action *and* that Bridgewater is entitled to keep the entirety of the settlement amount that it negotiated with Yankee Candle, which obviously encompassed this Court's award of attorneys' fees and disbursements to Bridgewater. The Court should not tolerate Bridgewater's obviously improper tactics. To the extent that it is not already clear from the record in the *Yankee Candle* Action, the Court should enter an order affirming that the Settlement Agreement between Yankee Candle and Bridgewater is not subject to the Court's Protective Order and, accordingly, this Court has no stake in whether the Settlement Agreement can be introduced in the South Carolina Action.

## CONCLUSION

For the reasons stated above, the Court should (1) modify the Protective Order so as to permit Hartford to have access to all affidavits and exhibits in the Court's file relating to the attorneys' fees proceeding; and (2) enter an order confirming that the Settlement Agreement between Yankee Candle and Bridgewater is not subject to the terms of the Protective Order.

Respectfully submitted,

**HARTFORD CASUALTY INSURANCE COMPANY**

*John T. Harding*

Michael F. Aylward BBO #024850
John T. Harding, Jr. BBO #221270
**MORRISON, MAHONEY & MILLER, LLP**
250 Summer Street
Boston, Massachusetts 02210
(617) 439-7500

John G. Bagley BBO #026050
**MORRISON, MAHONEY & MILLER, LLP**
1500 Main Street – Tower Square – Suite 2400
Springfield, MA 01115
(413) 231-1249

## CERTIFICATE OF SERVICE

I, John T. Harding, counsel for Hartford Casualty Insurance Company, hereby certify that on March 10, 2004, I served a copy of the foregoing document on all counsel of record in the *Yankee* Candle Action by facsimile.

*John T. Harding*

John T. Harding

12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |  |
|---|---|---|---|
| THE YANKEE CANDLE COMPANY, INC., | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | | Civil Action No. 98-30226-MAP |
| | ) | | |
| THE BRIDGEWATER CANDLE | ) | | |
| COMPANY, LLC, | ) | | |
| | ) | | |
| Defendant. | ) | | |
| | ) | | |

## PROTECTIVE ORDER CONCERNING
## CONFIDENTIALITY OF CERTAIN CASE MATERIALS

1.      In connection with discovery proceedings in this action, the parties to this action and third parties who are called upon to provide discoverable documents, things and information, provided such third parties recognize and accept the procedures herein, may designate any document, thing, material, testimony or other information derived therefrom, as "SUBJECT TO PROTECTIVE ORDER – No. 98-30226-MAP" or "Confidential" (collectively referred to hereinafter as "SUBJECT TO PROTECTIVE ORDER") under the terms of this Stipulated Protective Order (hereinafter "Order"). Information SUBJECT TO PROTECTIVE ORDER is information which has not been made public and which the designating party considers proprietary information, including that which concerns or relates to marketing, market strategy, advertising strategy, pricing, actual and projected sales, distribution methods, actual and projected expenses and costs, identification of customers, vendors, subcontractors, inventories, and amount or source of any income, profits, losses, or expenditures of the person, firm,

partnership, corporation, or other organization producing the information, or any other information of commercial value.

2.      Documents and other discovery material containing SUBJECT TO PROTECTIVE ORDER information, as defined in paragraph 1, shall be so designated by stamping copies of the document produced to a party with the legend "SUBJECT TO PROTECTIVE ORDER – No. 98-30226-MAP" or "Confidential." All pages of any multi-page document designated as SUBJECT TO PROTECTIVE ORDER shall be stamped with the applicable legend. Except as otherwise agreed in writing by the parties, such marking shall be made at or before the time the producing party provides the requesting party with its own copies of the materials sought by the requesting party. Until such time, all materials produced for inspection shall be deemed SUBJECT TO PROTECTIVE ORDER.

3.      Testimony taken at a deposition, conference, or hearing may be designated as SUBJECT TO PROTECTIVE ORDER by making a statement to that effect on the record at the time. The party or non-party requesting such designation shall make arrangements with the court reporter taking and transcribing such proceeding to bind separately such portions of the transcript containing information designated as SUBJECT TO PROTECTIVE ORDER and to label such portions appropriately.

4.      The material designated as SUBJECT TO PROTECTIVE ORDER under this Order, the information contained therein, and any summaries, copies, abstracts, or other documents derived in whole or in part from material designated as SUBJECT TO PROTECTIVE ORDER shall be used only for the purpose of the prosecution, defense, or settlement of this action, and for no other purpose.

5.    Material designated SUBJECT TO PROTECTIVE ORDER produced pursuant to this Order may be disclosed or made available *only* to counsel for a party and employees of such counsel (including the professional, paralegal, clerical, secretarial or other employees of such counsel), third party commercial copying services, and to the "qualified persons" designated below:

(a)    court reporter(s) utilized in connection with this action;

(b)    the Court, any juror, or any other entity authorized by the Court or required by law;

(c)    any expert witness, specifically retained in connection this litigation, provided such person is provided a copy of this Order and executes a nondisclosure agreement in the form of Attachment A, a copy of which shall be available to counsel for each other party.

(d)    any deposition witness (other than an expert witness) who has been provided a copy of this Order and, at the time of the deposition, either executes a nondisclosure agreement in the form of Attachment A, or stipulates on the record of the deposition to be bound by the provisions of this Order; and

(e)    any person who generated, created, produced, received or would otherwise have seen in the ordinary course of business the information designated as SUBJECT TO PROTECTIVE ORDER.

6.    In any deposition during which a party wishes to disclose SUBJECT TO PROTECTIVE ORDER material to a deponent, that portion of the deposition in which such material is disclosed must be taken in the presence of only those persons who are permitted under the terms of this Order to have access to the SUBJECT TO PROTECTIVE ORDER material disclosed in such depositions.   Portions of a deposition in which confidential material is disclosed shall be designated SUBJECT TO PROTECTIVE ORDER pursuant to paragraph 3. The party who originally designated the material as SUBJECT TO PROTECTIVE ORDER shall have the burden of assuring that the appropriate deposition portions are bound separately.

7.    Nothing herein shall impose any restrictions on the use or disclosure by a party of material obtained by such party from a party or a third party (unless SUBJECT TO PROTECTIVE ORDER) in this action, or from disclosing its own SUBJECT TO PROTECTIVE ORDER material as it deems appropriate. Nor shall this Order restrict the disclosure of material that: (a) is in the public domain at the time of disclosure; (b) becomes part of the public domain after the time of disclosure, through no fault of the receiving party; (c) was received from a third party who was under no obligation of confidentiality to the producing party; or (d) is derived or obtained independently of the disclosure.

8.    If a third party, through discovery procedures, supplies material to a party to the action that is subject to a claim of confidentiality, the terms of this Order shall apply to such material to the same extent as if it had been produced by a party. The third party who supplies such material has the burden of assuring that the materials are properly designated as SUBJECT TO PROTECTIVE ORDER under paragraphs 2 and 3.

9.    If SUBJECT TO PROTECTIVE ORDER material is filed with the Court, it shall be filed only in sealed envelopes on which shall be affixed the title of this action and a statement substantially in the following form:

SUBJECT TO PROTECTIVE ORDER – No. 98-30226-MAP

Pursuant to the Protective Order dated February ____, 1999, this envelope is not to be opened or the contents hereof displayed or revealed except by order of Court.

Documents so designated shall be maintained as SUBJECT TO PROTECTIVE ORDER by the Clerk of the Court pending final disposition of this action, and said documents shall be released only upon further order or orders of the Court.

10.    This Order shall be without prejudice to the right of the parties to bring before the Court at any time the question of whether any particular document or information should be SUBJECT TO PROTECTIVE ORDER. Any such request must specifically identify the document or information at issue. This Order shall not be deemed to prejudice the parties in any way in any future application for modification of this Order.

4

11.    If a party to this action or any third party seeks to remove the protection of this Order from material which is designated as "SUBJECT TO PROTECTIVE ORDER No. 98-30226-MAP," it must (1) notify all parties and/or the third-party provider of said material as to the specific identity of the material (including where applicable document numbers or other identifying information) and of its intention to remove said information from this Order and thereafter (2) file a motion with the Court seeking such relief. The restrictions of this Order shall not be lifted until the Court so orders or the disclosing party agrees in writing or on the record at deposition.

12.    In the event that a party or third party inadvertently discloses documents or things which were intended to be designated as SUBJECT TO PROTECTIVE ORDER, the party or third party shall notify the receiving party of the error and identify with particularity the inadvertently disclosed items. Thereafter the receiving party may, at its election: (a) stamp the inadvertently disclosed items with the stamp typically used by the producing party or (b) return the items to the designating party for stamping. In the event option (b) is exercised, the documents will be stamped and promptly returned by the designating party.

13.    This Order is entered solely for the purpose of facilitating the exchange of documents and information without involving the Court unnecessarily in the process. Nothing in this Order, nor the production of any information or document under the terms of this Order, nor any proceedings pursuant to this Order shall be deemed to have the effect of an admission or waiver by either party altering the confidentiality or nonconfidentiality of any such document or information or altering any existing obligation of any party or the absence thereof.

14.    This Order shall survive the final termination of this action, to the extent that the information contained in SUBJECT TO PROTECTIVE ORDER material is not or does not become known to the public, and the Court shall retain jurisdiction to resolve any dispute concerning the use of information disclosed hereunder. Upon final termination of this action, each party that is subject to this Order and/or its representatives shall return to the party or third-party which provided SUBJECT TO PROTECTIVE ORDER material all items containing

said information and all copies of such matter, except that counsel may retain, for their files, copies of such pleadings, depositions, trial testimony, admissions and answers to interrogatories as counsel deems necessary to preserve an accurate record of the proceedings; provided, however, that copies of any such retained SUBJECT TO PROTECTIVE ORDER documents shall not thereafter be provided to any party to this action (other than to the provider of such document or information, if it so requests).

IT IS SO ORDERED:

Dated: _____

AGREED:

Dated: _February 9, 1999_

_____
United States District Judge

Gregory L. Baker, Esq.
Cecil E. Key, Esq.
HOWREY & SIMON
1299 Pennsylvania Ave., N.W.
Washington, D.C. 20004
(202) 783-0800

Donald S. Holland, Esq. BBO # 238120
Mary R. Bonzagni, Esq. BBO # 553771
HOLLAND & BONZAGNI
Longmeadow Professional Park
171 Dwight Road
Longmeadow, MA 01100
(413) 567-2076

ATTORNEYS FOR PLAINTIFF
THE YANKEE CANDLE COMPANY, INC.

Dated: _February 9, 1999_

Bruce R. Parker, Esq. BBO #543943
Michael A. Albert, Esq. BBO #558566
Katherine M. Hamill, Esq. BBO #639201
FOLEY, HOAG & ELIOT LLP
One Post Office Square
Boston, MA 02109
(617) 832-1000

6

03/09/04   10:29 FAX 617 227 0927    SLOANE WALSH    ☑ 010/012

Richard M. Moose, Esq.
Jeffrey M. Karmilovich, Esq.
DORITY & MANNING, PA
700 East North Street, P.O. Box 1449
Greenville, SC 29602-1449
(864) 233-7342

Arthur H. McQueen, Esq.
MCQUEEN LAW FIRM
175 Alabama Street
Spartanburg, SC 29302
(864) 585-5021

ATTORNEYS FOR DEFENDANT THE
BRIDGEWATER CANDLE COMPANY,
LLC

7

ATTACHMENT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| THE YANKEE CANDLE COMPANY, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 98-30226-MAP |
| | ) |
| THE BRIDGEWATER CANDLE COMPANY, LLC, | ) |
| | ) |
| Defendant. | ) |

## AGREEMENT TO BE BOUND BY THE PROTECTIVE ORDER

This is to certify that I have read and understand the Protective Order entered in *The Yankee Candle Company, Inc. v. The Bridgewater Candle Company, LLC*, United States District Court for the District of Massachusetts, Civil Action No. 98-30226-MAP and agree:  (a) to be bound by the terms and conditions listed therein; (b) not to reveal materials, documents, testimony or things, or information derived therefrom, which are covered by the order to anyone other than another person designated to receive such information; and (c) to utilize such information solely for purposes of this civil action. In addition, I hereby consent to the jurisdiction of said Court for purposes of enforcing this Order.


Dated: _____          _____

## Certificate of Service

I hereby certify that on February 11, 1999, pursuant to the agreement of the parties as to the manner of service, I caused a true copy of the above document to be sent to counsel for Plaintiff, at the addresses below, by Federal Express overnight delivery service.

Donald S. Holland, Esq.
HOLLAND & BONZAGNI, P.C.
Longmeadow Professional Park
171 Dwight Road
Longmeadow, MA 01100

Gregory L. Baker, Esq.
HOWREY & SIMON
1299 Pennsylvania Ave., N.W.
Washington, DC 20004

_____
Katherine M. Hamill