UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

In re: PETITION OF THE HARTFORD )  Civil Action No.
CASUALTY INSURANCE COMPANY )  04-CV-30051-MAP

### OPPOSITION TO HARTFORD INSURANCE COMPANY'S PETITION TO MODIFY PROTECTIVE ORDER

Bridgewater Candle Company, LLC ("Bridgewater") hereby opposes the petition of The Hartford Casualty Insurance Co. ("Hartford") to modify the protective order entered on February 16, 1999 in the underlying case between Bridgewater and the Yankee Candle Company, Yankee Candle Co. v. Bridgewater Candle Co., Civil Action No. 98-30226-MAP (the "Yankee Candle Action").[1]

Hartford misleads this Court by suggesting (without evidentiary support) that the relief sought was specifically requested by the Hon. Henry Floyd of the United States District Court for the District of South Carolina while presiding over the currently pending litigation between Bridgewater and Hartford, Bridgewater Candle Co. v. Hartford Cas. Ins. Co., Civil Action No. 6-01-4719-26 (D.S.C.) (the "South Carolina Action"). To the contrary, Judge Floyd never requested that this Court remove the confidential designations of affidavit exhibits, nor did Judge Floyd request that Hartford ask this Court for permission to disclose the contents of the confidential Settlement

---

[1] As a threshold matter, Hartford's action has not been properly served on any party of interest in this case. Service of process certainly has not been made on Bridgewater, and Bridgewater is not aware of service having been made upon Yankee Candle either. Nonetheless, by letter dated March 11, 2004, sent to Bridgewater's counsel yesterday afternoon, Bridgewater was advised that the Court had requested a response to Hartford's petition to be submitted to the Court by 10:00 a.m. today. Accordingly, the within response is being submitted without waiver of Bridgewater's rights to object to any procedural or jurisdictional defects in the manner in which Hartford has purported to commenced the within proceeding.

Agreement between Bridgewater and the Yankee Candle Company ("Yankee") during trial in the South Carolina Action.[2] See Declaration of Karen Creech, ¶¶ 8-10 (filed herewith).

Hartford's petition seeks to accomplish two goals: First, to obtain discovery in the South Carolina action even though discovery in that case has been closed for five months and trial is underway; and second, to obtain permission from this Court to use the Settlement Agreement or its contents at trial in the South Carolina Action even though the Judge presiding over that trial has excluded the evidence on several grounds including failure to comply with local rules and orders of the South Carolina court. It is improper for Hartford to seek to use this Court to do an end-run around adverse orders entered against it by Judge Floyd in a trial currently ongoing in Judge Floyd's courtroom. Its attempt to do so, moreover, is rife with factual inaccuracies material to the request.

Hartford neglects to mention, in its papers, that the South Carolina court has already denied Hartford's request to use the Settlement Agreement because, *inter alia*, Hartford **failed to list the Settlement Agreement as an exhibit** in its pretrial memorandum as required by D.S.C. Local Rule 26.05(N), and **failed to provide the notice required by Paragraph 7 of the South Carolina Protective Order**. (Creech Decl. ¶¶ 3, 4, 6). Indeed Hartford's pretrial memorandum listed over 460 exhibits, but failed to include the Settlement Agreement. (Creech Decl. ¶ 4). A third and independent basis for the ruling was the fact that using the document in open court or disclosing its contents would have violated the confidentiality requirements of the Settlement

---

[2] Hartford's disclosure of certain portions of this confidential Settlement Agreement in its petition is itself in violation of the Protective Order entered in the South Carolina Action.

Agreement itself, **to which Hartford had agreed to be bound** in the South Carolina Protective Order. (Creech Decl. ¶ 6).

Although confidentiality was one basis for the Court's ruling, the Court was quite clear when pressed on this issue by Hartford's counsel that the failure by Hartford to obey the rules of the South Carolina Court were independent grounds for the Court's denial of Hartford's motion, above and beyond the confidentiality in the Settlement Agreement itself. (Creech Decl. ¶¶ 3-5, 7). Even if this Court were to entertain Hartford's motion, the Settlement Agreement would still be inadmissible pursuant to the South Carolina court's ruling. (Creech Decl., ¶¶ 6, 7).

In an attempt to end-run evidentiary rulings made against it in the Court in which a trial is now taking place, Hartford appears in this Court with a petition unsupported (and unsupportable) by any affidavit or other evidence of the purported facts it alleges, and makes arguments designed to elicit from this Court a viewpoint different from that of the presiding Judge in the pending trial. In so doing, moreover, Hartford fails to advise this Court of the grounds upon which the South Carolina court ruled against it, or even to accurately characterize what those rulings were.

This is not the first time Hartford has attempted to argue its South Carolina case in Massachusetts. As the Court may recall, in December 2001, Hartford moved to intervene in the underlying case between Yankee and Bridgewater. This Court denied the motion, noting that Hartford's remedy (if any) was in the South Carolina Action. Hartford requested reconsideration, which was denied. Hartford appealed, and the appeal was ultimately dismissed. Once again, Hartford stands before this Court in an effort to prejudice the interests of its own insured (Bridgewater), in a case in which Hartford failed

to assume its defense obligations and in which (as is currently being argued in the South Carolina trial) Hartford acted in bad faith. The Court's denial of Hartford's earlier attempt to intervene may be res judicata; but even if that doctrine does not apply, Hartford's last-minute move once again to get this Court to rule on issues that are before a different federal court – in an ongoing trial – is improper. Deference would be appropriate (if not required) to the proceedings that are underway in Judge Floyd's courtroom.

## BACKGROUND

### I. BACKGROUND OF THE YANKEE CANDLE ACTION

As this Court will recall, the Yankee Candle Action involved an intellectual property lawsuit against a small, South Carolina start-up candle company, Bridgewater Candle Co. LLC, by its much larger competitor Yankee Candle. As this Court summarized it near the end of the case, "Yankee Candle's pursuit of [that] litigation . . . served not to defend any colorable copyright or trade dress claim, but to intimidate, discourage and financially damage an upstart competitor" through "egregiously aggressive litigation tactics." 140 F. Supp. 2d 111, 113-14, 118 (D. Mass. 2001). Bridgewater obtained final judgments in its favor on all counts, which were affirmed by the First Circuit on appeal, 259 F.3d 25 (1st Cir. 2001), as well as an award of over $1 million in attorneys' fees and costs. 140 F. Supp. 2d at 126. With an appeal of that award still pending, as well as under threat of a certiorari petition relating to the merits of the First Circuit's substantive rulings, Bridgewater entered into a confidential Settlement Agreement with Yankee.

Bridgewater subsequently brought suit against its insurer, Hartford, in South Carolina alleging certain damage claims for bad faith settlement practices in connection with Hartford's dealings with Bridgewater relating to the Yankee case. Other claims and counterclaims were filed in that action, including a claim by Hartford alleging rights in the fee award. These disputes are before the court in the South Carolina Action.

## II    HARTFORD'S MISCHARACTERIZATION OF THE UNDERLYING FACTUAL DISPUTES

Hartford's plea to this Court is improper and materially mischaracterizes the facts it relies upon for relief. Hartford's misstatements (due perhaps to its new counsel's unfamiliarity with the case, combined with its failure to confer with opposing counsel as required by Local Rule 7.1)[3] have resulted in confusion not only as to the proceedings that have taken place before the South Carolina court, but also as to the history of the underlying Yankee Candle Action. Accordingly, the fact that Hartford's petition is unsupported by any affidavit or other evidentiary submission is not merely a technical defect undermining its request – although it is certainly that – but in fact has resulted in a request that is factually baseless. Some of these errors, to the extent that they are related to this motion, are addressed below.

First, Hartford attempts to pass off as "undisputed" certain hotly-disputed factual allegations that are at the crux of the pending South Carolina trial. For example, the circumstances surrounding Hartford's failure to properly assume Bridgewater's defense in the Yankee Candle Action are hotly contested in that trial, and hardly appropriate for a

---

[3] Hartford's petition violates D. Mass. Local Rule 7.1 as Bridgewater was not notified of this "petition" until after close of business on March 10, 2004 when it was sent a copy of the petition by Hartford's counsel. Last time Hartford sought (and was denied) intervention in this case in 2001, it likewise failed to comply with Local Rule 7.1. Perhaps a discussion prior to seeking this relief would have resulted in a clarification of the facts.

776232.2                        5

curt and lopsided summary presented under the guise of "Background Facts." It is incomprehensible how Hartford can, in a casual aside, claim that "[w]hile there is some dispute as to exactly when the acceptance of its defense was communicated to Bridgewater, it was clear that Bridgewater was aware of this decision not later than May 1999" (Petition at 6) when Bridgewater vehemently denies that Hartford <u>ever</u> agreed to defend Bridgewater, and in fact the evidence overwhelmingly suggests that Hartford <u>never</u> sent the April 12, 1999 letter which is the only correspondence in which it claims to have "communicated" any such "acceptance."[4]

Next, Hartford mischaracterizes this Court's rulings denying Hartford's motion to intervene in the Yankee Candle Action. Hartford asserts that the Court denied a motion to impound the Settlement Agreement – presumably seeking to suggest that the Court viewed the document as not requiring confidentiality. In fact, however, that motion, which had been filed by Yankee, was expressly advanced as an <u>alternative</u> request to be considered if and only if the Court decided to grant Hartford's motion to intervene and to disclose the contents of the Settlement Agreement. (<u>See</u> Motion by Yankee Candle Co. To Seal / Impound Proceedings, Yankee Candle Action Docket # 229). Yankee

---

[4] Hartford once before misrepresented to this Court that it had sent the April 12, 1999 letter. It did so in the context of its motion to intervene, which this Court denied. In those papers, Hartford claimed that Rachel Faber of Hartford sent that letter to Bridgewater, agreeing to assume Bridgewater's defense. (<u>See</u> Exhibit F to Hartford's December 12, 2001 Memorandum In Support Of Its Motion For Preliminary Injunction, submitted in the Yankee Candle Action). But that letter was never received by any of its intended recipients (including Bridgewater's insurance representative, the McNeill-Patterson Insurance Agency); Hartford has no evidence of the letter ever being sent or received, such as any return receipt, despite the letter noting that it was to be sent "return receipt requested"; and the letter itself had all the indicia of being an unsent draft – including lines that appeared over pre-printed letterhead, a portion of text one and a half paragraphs long that was repeated on two different pages, and perhaps most notably the fact that it was unsigned, and no signed copy ever appeared in anyone's files. Despite the overwhelming evidence that this letter was merely an unsent draft, Hartford represented to this Court, without any proof, that the letter was in fact sent to Bridgewater. By letter dated February 26, 2002, Bridgewater's counsel sought clarification and correction of this representation from Hartford's then-counsel at Sloane & Walsh. Hartford never responded.

776232.2                                6

expressly noted that its request <u>would be moot</u> if the Court did not allow Hartford's motion to intervene. As the Court denied Hartford's motion, Yankee's conditional motion to impound the Settlement Agreement was duly denied "as moot," by Order dated December 14, 2001.

Hartford also wrongly cites the Affidavit of Michael Albert (filed January 10, 2001 in the Yankee Candle Action) for the proposition that Bridgewater's bills were inefficient or unreasonable. Hartford argues that since Bridgewater redacted its fee totals prior to submitting its request for fees and costs, the sum of its requests to Hartford must therefore also have been unreasonable. Additionally, Hartford argues that because the Court did not award the full amount requested by Bridgewater, Hartford should not have to pay the full cost of Bridgewater's defense. Should Hartford's position prevail, counsel will be forced – contrary to precedent – to cease exercising "billing judgment" (as case law suggests they should do) and attempting to present conservative fee requests, in favor of simply demanding the entire cost of a litigation every time they prevail. The simple answer is that Hartford is confusing two different standards of reasonableness – one being what is reasonable for an insurer to pay its insured under an insurance contract that requires a full and complete defense to a case, versus what is reasonable for purposes of the very different exercise by which a federal court decides whether, and in what amount, to enter a fee-shifting award as a sanction for meritless or improperly-pursued intellectual property litigation – a matter committed to the sound discretion of the district court. To follow Hartford's logic, if the Court chose to award no fees in the underlying litigation, Hartford would be under no obligation to honor its insurance contract and compensate its insured for the costs incurred in its defense of the case. This clearly is not the law.

776232.2                                         7

More fundamentally, it would be improper to engage in a mini-trial of these issues here, as they are all currently being tried before the South Carolina court. Hartford's "Background Facts," however, hardly comprise the undisputed case history Hartford would have this Court believe.

## III   HARTFORD'S MISCHARACTERIZATION OF THE ACTIONS OF THE SOUTH CAROLINA COURT

Hartford next represents that action by this Court is necessary to resolve some issue concerning confidential materials in the South Carolina action, and that the South Carolina court requested this Court's opinion. Neither statement is true.

### A.   The South Carolina Court Did Not Request An Order From This Court.

Judge Floyd did not ask Hartford to petition this Court. (Creech Decl. ¶ 8). For Hartford to characterize the South Carolina court's actions in this manner (as it did on page 11 of its petition) is misleading.

At trial in the South Carolina Action, Hartford requested permission to use the Settlement Agreement, and the information it contained, at trial. (Creech Decl. ¶ 6). Judge Floyd denied Hartford's request, on several grounds. (Id.) Hartford then asked if an order from this Court would clarify the confidentiality issues surrounding the Settlement Agreement and change the South Carolina Court's mind regarding admissibility. Judge Floyd indicated that it would <u>not</u>. (Creech Decl. ¶ 8). Hartford's petition is therefore <u>moot</u>. Indeed, the South Carolina Court made it clear that its ruling was based on a number of factors, including Hartford's failure to list the Settlement Agreement in its pretrial exhibit list, (Creech Decl. ¶ 6), its failure to give five days written notice of its intent to use the Settlement Agreement, in violation of Paragraph 7 of the South Carolina Protective Order and D.S.C. Local Rule 5.03 (Id.), and the fact that

776232.2

8

introducing such evidence would violate the terms of the Settlement Agreement itself, negotiated at arms' length between two parties to a prior lawsuit. (Id.)

The South Carolina Court did not rule that it would permit the Settlement Agreement to be used in the South Carolina action if this Court determined it was beyond the Protective Order in the Yankee Candle Action. (Creech Decl. ¶ 10).

B.  Yankee Did Not Assent to the Use of the Settlement Agreement At Trial.

Hartford further characterizes Yankee Candle's position as being consistent with its own, and as stating that it had "no objection" to Hartford's use of the Settlement Agreement in open court. But Exhibit C to Hartford's own petition, which is the letter upon which it purports to rely in support of this contention, indicates precisely the opposite. In that letter, Yankee placed several conditions – which Hartford cannot meet – upon any use by Hartford of the Settlement Agreement. Hartford seeks a ruling from this Court that would enable it to use that agreement in a manner expressly inconsistent with the purported "assent" from Yankee.[5] For example, Yankee specifically noted that it would not permit the contents of the Settlement Agreement to be disclosed in open court. (Ex. C to Hartford's Petition, ¶ 3). Yet Hartford has not taken steps to avoid such public disclosure. For example, it never petitioned the South Carolina court to present the Settlement Agreement under seal as required by the Local Rules. (Creech Decl. ¶ 6). As Yankee's letter indicates, it would indeed have an objection to Hartford's attempts to use the Settlement Agreement in a non-confidential manner.

Finally, Yankee's letter does not implicitly agree with Hartford's present petition. Hartford uses Yankee's letter in a way that suggests Yankee's assent to the present

---

[5] The letter in question, dated February 11, 2004, evidently was not written in response to the present motion. Calling it evidence of Yankee's "assent" to the present petition muddles the chronology.

776232.2                                    9

petition, but Yankee clearly has not done so as its letter predates the petition by one month and expressly rejects the kind of disclosure of confidential material Hartford is seeking.

## ARGUMENT

In this petition, Hartford seeks to collaterally challenge, in this Court, an adverse evidentiary ruling in the ongoing South Carolina trial. In so doing, Hartford reargues points already rejected by Judge Floyd in the trial now underway in South Carolina. Its request is moot because Judge Floyd has already said such an order would not change his mind about his order. To make matters worse, Hartford's attempt to induce this Court's involvement is based on the false insinuation (unsupported by affidavit or other evidence) that Judge Floyd actually sought out such collateral review, which he did not.

While Bridgewater is prepared, should this Court so request, to brief more fully the reasons why Hartford's arguments fail on the facts and the law, a more fundamental point is that Hartford has no business attempting to use this Court to intervene in, or even to comment substantively upon, disputes that have been joined in an ongoing trial in South Carolina. It is particularly inappropriate for Hartford to do so considering that it has already once before been advised by this Court that the proper forum in which to resolve its disputes with Bridgewater is in South Carolina.

### I.  HARTFORD LACKS STANDING

Hartford has made no showing, nor has it attempted to show, that it has standing to intervene in the Yankee Candle matter in order to seek modification of an order entered in that case. Hartford once before sought to intervene in that case. Its motion was denied. It has offered no better reasons now than it did then.

## II. THE PROTECTIVE ORDER SHOULD NOT BE MODIFIED

Hartford requests that this Court modify the Protective Order entered in the Yankee Candle Action, but it has shown no compelling reason to do so.

### A. Hartford's Request Is Untimely, as Judge Floyd Already Held.

Discovery in the South Carolina action has long since closed. Judge Floyd pointed out at the trial that Hartford had had three years during which to conduct discovery and to seek, whether from this or any other Court, any rulings that might be required in order for it to develop the evidence it might need in the case now being tried. (Creech Decl., ¶ 11). He further noted that any difficulty that Hartford might now be experiencing concerning the introduction of materials designated as "Confidential Information" pursuant to the South Carolina Stipulated Protective Order were of its own making, in that the South Carolina Action had been pending long enough for Hartford to have timely sought, through appropriate channels, any discovery, rulings, or other materials that it might have needed to develop its case. (Id.) Judge Floyd made it quite clear to Hartford that its failure to act in a timely fashion did not create an emergency warranting judicial relief. (Id.) Ignoring Judge Floyd's admonition, Hartford has instead rushed into this Court, in the middle of its ongoing South Carolina trial, seeking to make an emergency of its own delay.

### B. Hartford's Request Is Meritless.

Hartford's petition is couched as a request to lift the Protective Order. In effect, however, it is simply an attempt to gain additional discovery in the middle of trial. While the Court presiding over the trial might have discretion to provide such relief, another Court does not. Discovery in South Carolina closed five months ago. Even if the

776232.2

11

materials Hartford is seeking were not confidential, and were not covered by a protective order, it would still be far too late to request them.

Furthermore, Hartford's request is drastically overbroad. The materials sought by Hartford are exhibits and affidavits relating to the motion for attorneys' fees. These materials contain information that is highly sensitive to Bridgewater's business. It also contains extensive attorney-client privileged information, which is subject to the highest standards of confidentiality in light of the compelling interest in protecting attorney-client confidences. See In re Keeper of Records, 348 F.3d 16 (1st Cir. 2003) ("the attorney-client privilege is highly valued. Accordingly, courts should be cautious about finding implied waivers.") There is no compelling concern or public interest that requires the Protective Order to be modified to reveal this information. This material is properly subject to the Protective Order and no good cause has been shown for its modification.

### III. THE COURT SHOULD DECLINE TO ISSUE AN ADVISORY ORDER REGARDING THE SETTLEMENT AGREEMENT

Because of a series of missteps made by Hartford in its prosecution of the South Carolina Action, including failure to operate under the South Carolina Protective Order and failure to comply with the Local Rules of the United States District Court for the District of South Carolina, that Court has ruled that Hartford is not permitted to use the Settlement Agreement during trial. Hartford's filing before this Court is nothing more than a second bite at the apple, hoping that this Court will make a ruling that will alter the landscape in the South Carolina Court. But one federal district court does not normally offer advisory opinions to another as to how to conduct a trial.

Hartford, without quoting any language from the South Carolina court or even offering a declaration regarding what has occurred there, offers inaccurate characterizations of the proceedings and then argues that Bridgewater's position in the South Carolina trial is "obviously improper." Whether Bridgewater's position or Hartford's position will be vindicated in the South Carolina trial is a matter that the Judge and jury in that Court are in the process of deciding. Hartford's attempt to circumvent that process by inviting judicial commentary on it from an outside source is unusual, to say the least.

Equally misguided is Hartford's position that this Court should articulate a view as to whether it has a "stake" in the admissibility *vel non* of a document as an exhibit in another federal Court's proceedings. This Court, of course, does not have a "stake" in any dispute before it (or elsewhere).[6] The parties, however, do, and the orders that were entered by this Court in prior proceedings were made in light of the parties' stakes. Hartford's insinuations to the contrary notwithstanding, neither of the two parties to the prior case has relinquished its interest in the confidentiality of the documents subjected to the protection of the order. Hartford does not even claim, let alone argue, that Bridgewater has given up the very sensitive and confidential materials that it filed under seal in connection with its fee petition, many of which include confidential attorney-client privileged communications and sensitive business information. Nor is it accurate for Hartford to suggest (although it does suggest) that Yankee, the other party, has given up those rights either. On the contrary, Yankee's position letter on this issue makes it clear that it does not accept public disclosure of these materials, which would be the only

---

[6] Hartford's petition purports to be under 28 U.S.C. § 1361. That section, which allows district courts to compel officers of the United States to perform a duty owed to a plaintiff, is inapposite to this matter.

776232.2

13

possible result of allowing them to be introduced in the South Carolina courtroom in light of Hartford's failure to timely seek closure of that courtroom for the introduction of confidential evidence pursuant to the Local Rules of the South Carolina federal district court. (D.S.C. Local Rule 5.03).

The parties entered into the Settlement Agreement with the understanding that their rights to confidentiality would be preserved. The question is not whether this Court has any objection to the use of the Settlement Agreement, as the Court has never seen it, but whether the parties' intent to keep the Settlement Agreement confidential should be preserved, within the rules of the South Carolina court. Judge Floyd has already ruled that they should, and there is no reason for this Court to disturb that ruling or indeed to take any action in connection with a trial pending in another federal district.

## CONCLUSION

For the above reasons, Hartford's Petition to Modify Protective Order in the Yankee Candle Action should be denied. Request No. 1 seeks discovery five months after discovery has closed. Any such request should be directed to the Court in which the

776232.2                            14

case is pending. Request No. 2 invites judicial commentary on a document not before this Court. The request is both inappropriate and unnecessary.

Respectfully submitted,

BRIDGEWATER CANDLE COMPANY, LLC

Dated: March 12, 2004

Michael A. Albert, BBO # 558566
Ilan N. Barzilay, BBO # 643978
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02110
(617) 646-8000

Of Counsel:

Richard M. Moose
DORITY & MANNING, P.A.
700 East North Street, Suite 15
Greenville, South Carolina 29601-3000
(864) 271-1592

### Certificate of Service

I hereby certify that on March 12, 2004, I caused true copies of the above document and the accompanying Declaration of Karen Creech to be sent via First Class Mail with courtesy fax copy to counsel listed below:

FOR YANKEE CANDLE:

Donald S. Holland, Esq.
HOLLAND & BONZAGNI, P.C.
Longmeadow Professional Park
171 Dwight Road
Longmeadow, MA 01100

David Bassett, Esq.
Hale & Dorr LLP
60 State Street
Boston, MA 02109

FOR HARTFORD INSURANCE:

John T. Harding, Jr., Esq.
MORRISON, MAHONEY & MILLER, LLP
250 Summer St.
Boston, MA 02210

John G. Bagley
MORRISON, MAHONEY & MILLER, LLP
1500 Main Street
Tower Square – Suite 2400
Springfield, MA 01115